UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **RUSSELL HEWITT, ET AL** | **CIVIL ACTION NO. 06-1697 (LEAD)** |
| VS. | **CONSOLIDATED WITH: 06-2264; 06-2265; 06-2267; 06-2268; 06-2271; and, 06-2272** |
| **ROBERT HENDERSON, ET AL.** | **SECTION P** |
| | **JUDGE MINALDI** |
| | **MAGISTRATE JUDGE WILSON** |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint[1] (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiffs Russell Hewitt, Raymond Huddleston, Perry Chopin, Travis B. Lewis, Mark Leach, David Cooper, and Deonte Brown. Plaintiffs are inmates in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). They are incarcerated in "Extended Lockdown" at the C.Paul Phelps Correctional Center (CPP), DeQuincy, Louisiana, and complain that the periodic denial of the generally allotted 1-hour per day out-of-cell exercise period as a disciplinary tool violates their Eighth Amendment right to be free from cruel and unusual punishment. Plaintiffs named CPP Warden Robert Henderson and his staff (Nathan Cain, Roy Williams, Herbert Ragle, Angie Pierce, Marcus Myers, David Clouse, Gene Wilson, Brent Thompson, Robbie Berube and Delanie Burgess) along with LDOC employee Linda Ramsey as defendants. As relief, plaintiffs seek an injunction prohibiting the use of cell confinement as a

---

[1] On April 16, 2007, this court consolidated *Huddleston v. Henderson, et al,* 06-2268; *Lewis v. Henderson, et al,* 06-2272; *Leach v. Henderson, et al,* 06-2265; *Cooper v. Henderson, et al,* 06-2264; *Brown v. Henderson, et al,* 06-2271; and, *Chopin v. Henderson, et al,* 06-2267, under docket number 2:06 cv 1697, *Hewitt v. Henderson, et al.*

disciplinary sanction and punitive damages of $5.00 for each day that they have been so confined.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §1915 and 1915A.

## Statement of the Case

On September 29, 2006, lead plaintiff Hewitt filed his civil rights complaint in which he complained that the denial of the allotted 1-hour of out-of-cell recreation as a disciplinary tool violates the Eighth Amendment's prohibition against cruel and unusual punishment. [Doc. 1-1, paragraph IV]. In an attachment to the complaint, plaintiff named seven other inmates along with the notation, "and on behalf of those who are subject too." [Doc. 1-1, Attachment A]. On November 29, 2006, Hewitt filed an amended complaint and named seven fellow inmates as plaintiffs. [Doc. 5-1, p. 1]. In the amended complaint, plaintiff summarized the claims for relief as follows:

> Plaintiffs are confined under the classification of Extended Lockdown, Maximum Custody. Plaintiffs are confined to an assigned cell 23 hours a day with one hour exercise time ... This confinement is continual unbroken by work assignments, school or other outside activity. Although the confined plaintiffs status is subject to regular review to determine the necessity for Administrative Segregation still exists. This review is no guarantee that the inmate will be released from segregation at an earlier date which results in the plaintiffs being held in administrative segregation for months at a time ... <u>Under these circumstances the courts have held that one hour of out-of-cell exercise time must be provided for the inmates</u>. [Doc. 5-1, pp. 8-9; emphasis supplied].

Hewitt alleged, "This practice has caused physical and psychological damage, stress, tension, anger, feelings of helplessness and denial of any opportunity of out-of-cell exercise for extended period of time..." [Doc. 5-1, p. 12].  Further, he conceded, "It has been recognized that the right of the one hour exercise period may be restricted when outweighed by legitimate penological justifications, genuine reasons, exigent, unusual circumstances or circumstance where disciplinary needs made both out-of-cell and outdoors exercise impossible [citations omitted] however the limitation must be no greater than necessary to protect the particular interest involved..." [*id.*, p. 13].  Hewitt then asserted the belief that the prison's denial of out-of-cell exercise should not exceed fourteen days and cannot be supported as a Schedule B sanction. [*id.*]

Thereafter, the other named plaintiffs filed individual suits in which they requested that they be allowed to proceed as part of Hewitt's suit, and as previously stated, on April 16, 2007, the court consolidated these matters with Hewitt's case.  In their individual suits, the plaintiffs basically mimicked (although in less detail) plaintiff Hewitt's claims.  In fact, as to the filing of administrative grievances, several of the plaintiffs stated that they did not file ARP's because other inmates had filed on the same issue and the ARP's were rejected by the administration with the notation that the matter was already under review.

In sum, the ARP filed in the lead case stated that the inmate was placed in Extended Lockdown at Phelps Correctional Center and confined to a long lock in time of 23 hours a day with one hour of recreation given.  The grievance also stated:

> According to the applied definition of the U.S. and state constitutional law that require that: An inmate held for a long lock in period of time must be provided exercise time of (1) one hour as his basic minimal human need. This is stipulated

<u>as a right, a law, and an order from and within the United States and State Constitutions. It is not a privilege.</u>
<u>Here at Phelps Correctional Center, the above mentioned United States and State Constitution orders and law is being violated when it is treated as a privilege that can be taken in lieu of minor and non-relating to recreation disciplinary reports and imposed sanctions</u>.
The imposing of certain Disciplinary actions which restricts exercise time combined with long lock in periods that confines an inmate to his cell for the (1) one hour given to the inmate by the United States and State Constitutions is cruel and unusual punishment ...
<u>This (1) one hour recreation inmates are to receive is not a privilege or an incentive that is earned. Therefore it should not be used as a [device] to punish the inmate...</u>  [*id.*, pp. 1-2, emphasis supplied].

In response to the ARP, the CPP administration responded,

<u>In your complaint you allege that while being housed in the cellblock that you have the right to one hour exercise daily for every 24 hours while housed in the cellblock. That according to the U.S. and state constitutions, this is a right and not a privilege.</u> You allege that this right is being violated here at PCC through the imposing of certain Disciplinary actions which restricts exercise time.  According to the La. Dept. of Public Safety and Corrections, Disciplinary Rules and Procedures for Adult Inmates, dated December, 2000, on page 10, under the section for Sanctions there are allowable sentences for various offenses. <u>For serious violations (Schedule B), on page 12, sentence #3, allows as one of the permissible sentences, confinement to room or cell for up to 30 days. Being taken through the Disciplinary process is Due Process. If you feel that you were tried or sentenced inappropriately then you may appeal any sentence received during this process.</u>  [Doc. 5-2, p. 3, Exhibit A2, emphasis supplied].

The denial of the grievance was appealed to the LDOC Secretary. [*id.*]   On July 20, 2006, the appeal was denied, noting:

"After due process hearings by a properly composed Disciplinary Board you were sanctioned to 'confinement to room.' <u>The penalty of room confinement is an approved sanction per the Louisiana Department of Public Safety and Corrections Rule Book for Adult Inmates. Your allegation of not being allowed exercise is not correct. You have unimpeded access to space in your assigned cell to exercise</u>." [Doc. 5-2, p. 4, Exhibit A3, emphasis supplied].

4

**Law and Analysis**

**1. Frivolity Review**

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a

plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiffs' original and amended complaints and the exhibits submitted, provide a detailed description of the facts relied upon to support their theory of liability with respect to their Eighth Amendment claim.  Additionally, the scope of plaintiffs' constitutional argument is narrow, and they have submitted a very specific claim for relief.  Therefore, further amendment of these pleadings would serve no useful purpose. Accepting all of plaintiffs' allegations as true, the undesigned concludes, for the reasons stated hereinafter, that they has failed to state a claim for which relief may be granted and therefore dismissal of the matter is recommended.

**2. Cruel and Unusual Punishment**

The focus of plaintiffs' complaint is the contention that they are constitutionally entitled to one-hour of out-of-cell exercise/recreation per day. Consequently, they claim  that the denial of this right, even for legitimate disciplinary purposes, amounts to cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment does not mandate comfortable prisons, however, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th  Cir.1999).  Therefore, the conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).  Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper*, 174 F.3d at 719 . First, there is an objective requirement to demonstrate conditions "so

serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

Conditions of confinement amounting to severe deprivations without penological justification violate a prisoner's rights under the Eighth Amendment; however, conditions of confinement that infringe upon the prisoner's constitutional rights may nevertheless pass Eighth Amendment scrutiny provided the conditions are reasonably related to legitimate penological interests. See *Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392; *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir.1998). Moreover, prison officials are not required to adopt the policy least restrictive of prisoners' rights, so long as the policy itself is reasonable. *Talib*, 138 F.3d at 215 n. 4, citing *Turner v. Safley*, 482 U.S. 78, 90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987).

Contrary to plaintiffs' assertion, neither the Supreme Court nor the Fifth Circuit Court of Appeals has ever specifically held that inmates enjoy an absolute right of out-of-cell recreation or exercise. *Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir.1986) (The Fifth Circuit set aside lower court's judgment requiring county jail to provide either outdoor exercise or an indoor exercise facility.); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983) (The deprivation of exercise is not *per se* violative

7

of the Eighth Amendment.)  The Fifth Circuit has always and only held that an <u>extended deprivation of exercise opportunities</u> might impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case. *Green*, 801 F.2d at 771-72; *Ruiz*, 679 F.2d at 1152 (Factors, such as cell size, the amount of time the inmate spends in his cell each day, and the overall duration of confinement together with the inmate's physical and other needs must be considered in determining whether an inmate is denied the opportunity for regular physical exercise); *Montana v. Commissioners Court*, 659 F.2d 19, 22 (5th Cir. Unit A 1981); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir.1979) ("[C]onfinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise ... <u>may</u> make out an eighth amendment violation.").  The United States Supreme Court as well as the courts of other circuits, have included exercise as one of the "basic human needs" protected by the Eighth Amendment. See, e.g., *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets."; *Williams v. Greifinger*, 97 F.3d 699, 704 (2nd Cir.1996) ("... some opportunity for exercise must be afforded to prisoners. "); *Allen v. Sakai*, 48 F.3d 1082, 1088 (9th Cir.1994) (a long-term deprivation of exercise is a denial of a basic human need in violation of the Eighth Amendment). The Fifth Circuit itself has acknowledged that "[i]nmates require regular exercise to maintain reasonably good physical and psychological health." *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.1982) (citing *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir.1980); *Spain v.*

*Procunier*, 600 F.2d 189, 199 (9th Cir.1979)).

In other words, under the Eighth Amendment, prison officials must, at a minimum provide an adequate <u>opportunity for exercise</u> – whether indoors or out. Furthermore, such claims must be evaluated on a case-by-case basis and, in order to determine whether an inmate is being afforded an adequate opportunity to exercise, the court must generally consider a series of factors, including: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day, and (3) the overall duration of his confinement. *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986); *Ruiz*, 679 F.2d at 1152. Here, plaintiffs have not alleged the total deprivation of <u>exercise opportunities</u> – but rather only the denial of <u>out-of -cell</u> exercise opportunities, and that is insufficient to establish an Eighth Amendment violation. As noted by the LDOC Secretary's designee, throughout confinement in Extended Lockdown there is unimpeded access to space in the assigned cell to exercise. [Doc. 5-2, p. 4, Exhibit A3]. Further, with regard to the "amount of time the inmate spends locked in his cell," the evidence indicates that prisoners under "cell confinement" in Extended Lockdown are still permitted out-of-cell time for "... meals, medical, or other essential call-outs" as well as "allotted shower time." [Doc. 5-2, p. 6, Exhibit A-5]. Thus, even when out-of-cell exercise time is prohibited, prisoners are not required to spend 24 hours a day in their cells. Finally, it appears that the "overall duration of confinement" is dependent solely upon whether or not plaintiffs abide by the prison's disciplinary rules, and that determination is apparently made on a month to month basis. [Doc. 5-2, p. 45, Exhibit H3].

Even if out-of-cell exercise were a right guaranteed by the Constitution, the jurisprudence sometimes permits greater restrictions of rights in a prison then it would allow elsewhere. *Beard*

9

*v. Banks*, — U.S.—, 126 S.Ct. 2572, 2577, 165 L.Ed.2d 2572 (2006).  Prison regulations that "imping[e] on inmates' constitutional rights" may survive judicial scrutiny if the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89,  107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, with regard to prison regulations, courts owe "substantial deference to the professional judgment of prison administrators" and their restrictive prison regulations may be  permissible if they are "reasonably related  to legitimate penological interests." *Beard v. Banks*, 126 S.Ct. at 2577, quoting  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); and *Overton v. Bazzetta*, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

     Plaintiffs' complaint attacks the regulation, policy, or practice of denying out-of-cell exercise as a prison disciplinary tool.  In *Turner*,  482 U.S.  at 89, 107 S.Ct. 2254, the Court articulated four factors to determine  whether or not a challenged prison regulation is reasonably related to a valid penological interest:  (1) whether a valid, rational connection exists  between the regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right remain open to the complaining inmate; (3) the  impact that accommodation of the asserted constitutional right will have on guards, other inmates, and on the allocation of prison resources generally; and, (4) whether ready alternatives for furthering the governmental interest are available.

     As to the first factor, it is admitted that out-of-cell exercise restrictions are imposed as punishment for "disciplinary reports". [Doc. 5-2, Exhibit A].  It further appears that plaintiffs were confined in Extended Lockdown in the first place because of unspecified disciplinary

violations. Prisoners confined to Extended Lockdown have already been denied most of the privileges afforded to their fellow inmates in general population. See "Disciplinary Rules and Procedures for Adult Inmates." [Doc. 5-2, Exhibits E1 –E9; G1-G10; H1-H2[2]]. Therefore, prison administrators are limited in what additional privileges can be denied for continued misbehavior. The denial of out-of-cell exercise or recreation provides one of only a few remaining sanctions available to jail administrators and thus serves a legitimate penological objective. Compare *Beard v. Banks*, — U.S. at —, 126 S.Ct. at 2579.[3]

---

[2] The Rules define "Disciplinary Detention / Extended Lockdown" as "Maximum security area for confining inmates." [Exhibit E2]. The terms are further defined as "An indeterminate period of lockdown characterized by routine 90 day classification reviews to determine eligibility/suitability for release from this status. This type of segregation is used primarily after a Disciplinary Hearing for an inmate found guilty of violating one or more serious rules, or of being dangerous to himself or others, or of being a serious escape risk, or of posing a clear threat to the security of the facility..." [Exhibit E5]. Inmates in Extended Lockdown are restricted in the rights and privileges they may exercise. [Exhibits G1-G10; H1-H2].

[3] In *Beard, supra*, the Court examined a Pennsylvania policy that denied newspapers, magazines, and photographs to inmates housed in the "Long Term Segregation Unit" for disciplinary reasons. Some of these prisoners had been determined to be continually disruptive, violent, and dangerous. Others were described as the most incorrigible inmates. In upholding the regulations, the Court noted, "The Secretary ... set forth several justifications for the prison's policy, including the need to motivate better behavior on the part of particularly difficult prisoners, the need to minimize the amount of property they control in their cells, and the need to assure prison safety, by, for example, diminishing the amount of material a prisoner might use to start a cell fire. We need go no further than the first justification, that of providing increased incentives for better prison behavior... we find, ... that the Secretary's justification is adequate."
    The Court then noted that Pennsylvania had advanced three justifications for the policy, one of which was: "... to 'motivat[e]' better 'behavior' on the part of these 'particularly difficult prisoners,' by providing them with an incentive to move to level 1, or out of the LTSU altogether, and to 'discourage backsliding' on the part of level 1 inmates..." The Court then noted, "As we have said we believe that the first rationale itself satisfies *Turner's* requirements. First, the statement and deposition set forth a "'valid, rational connection' " between the Policy and " 'legitimate penological objectives.' " 482 U.S., at 89, 95, 107 S.Ct. 2254. The deputy superintendent stated in his deposition that prison authorities are 'very limited ⋯ in what we can and cannot deny or give to [a level 2] inmate [who typically has already been deprived of almost all privileges, see *supra*, at 2576], and these are some of the items that we feel are legitimate as incentives for inmate growth.' App. 190. The statement ...added that the Policy 'serves to encourage ⋯ progress and discourage backsliding by the level 1 inmates.' Id., at 27."
    The Court further observed, "[T]he deprivation of virtually the last privilege left to an inmate, and a significant incentive to improve behavior, are logical ones. Thus, the first factor supports the Policy's 'reasonableness.'"    The Court also noted, "As to the second factor, the statement and deposition make clear that, as long as the inmate remains at level 2, no 'alternative means of exercising the right' remain open to him. *Turner, supra*, at 90, 107 S.Ct. 2254. ..."
    Then, the Court further observed, "As to the third factor, the statement and deposition indicate that, were prison authorities to seek to 'accommodat[e] ⋯ the asserted constitutional right,' the resulting 'impact' would be

As to the second factor, as shown above, plaintiff s have never been deprived of all exercise opportunities; they retain alternative means of exercising in their cells. [Compare *Beard*, at 2579-80]. As to the third factor, it stands to reason that should the use of this remaining disciplinary tool be denied to prison authorities, the resulting impact on prisoner discipline in the Extended Lockdown would be negative. [Compare *Beard*, at 2580]. Finally, plaintiffs have pointed to no alternative which would accommodate their needs *at de mininis* cost to the valid penological interests advanced by the regulation at issue. [*id*.]

In other words, contrary to plaintiffs' assertion, prisoners have no constitutionally protected right to out-of-cell exercise or recreation and the denial of that privilege for disciplinary reasons serves a valid penological interest. Thus, accepting all of plaintiffs' factual allegations as true, plaintiffs have failed to state a claim for which relief may be granted.

Based on the foregoing,

**IT IS RECOMMENDED** that plaintiffs' civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

---

negative. That circumstance is also inherent in the nature of the Policy: If the Policy (in the authorities' view) helps to produce better behavior, then its absence (in the authorities' view) will help to produce worse behavior, e.g., 'backsliding' (and thus the expenditure of more 'resources' at level 2). Turner, 482 U.S., at 90, 107 S.Ct. 2254. Similarly, as to the fourth factor, neither the statement nor the deposition describes, points to, or calls to mind any 'alternative method of accommodating the claimant's constitutional complaint ⋯ that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests.' *Id*., at 90-91, 107 S.Ct. 2254."

The Court then went on to observe, "The real task in this case is not balancing these factors, but rather determining whether the Secretary shows more than simply a logical relation, that is, whether he shows a reasonable relation." Finally, the Court concluded, "*Overton* provides significant support for this conclusion. In *Overton* we upheld a prison's 'severe' restriction on the family visitation privileges of prisoners with repeat substance abuse violations. 539 U.S., at 134, 123 S.Ct. 2162. Despite the importance of the rights there at issue, we held that withholding such privileges 'is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.' *Ibid*." *Beard v. Banks*, — U.S. at —, 126 S.Ct. at 2579-80.

12

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, May 29, 2007.**

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE